IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ROBERT L. ANDERSON,

                          Plaintiff,                    OPINION AND ORDER

        v.                                              13-cv-00084-wmc

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                          Defendant.

Pursuant to 42 U.S.C. § 405(g), plaintiff Robert L. Anderson seeks judicial review of an administrative law judge's finding that Anderson was not disabled within the meaning of the Social Security Act. Because the ALJ fails to provide an adequate explanation for rejecting the opinions of a seemingly well-informed physician's assistant, the case will be remanded to the Commissioner for rehearing.

## FACTS

### I. Background

On January 3, 2012, Administrative Law Judge ("ALJ") Robert M. Wilson issued a decision denying Anderson's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. (AR 1.)[1] Eventually, this became the final administrative decision of the Commissioner of Social Security. On February 4, 2013, Anderson filed a timely

---

[1] The citations in this Order are drawn from the Administrative Record ("AR"). (Dkt. #8).

complaint for judicial review in this court pursuant to 42 U.S.C. § 405(g).

From 1993 to 2000, Anderson assembled large satellite dishes. (AR 29.) As part of his duties, Anderson was required to lift 50 to 150 pounds. (AR 29-30.) Most recently, Anderson served as a tree trimmer for ten years before ceasing all employment in April 2010. (AR 28, 30.) Anderson's normal lifting load in that job was an average of fifty pounds at a time. (AR 28-29.) Anderson worked ten hours a day, four days a week, and claims to have walked an average of 20,000 steps per day during that time. (*Id.*)

## II. Medical Evidence

### A. General

Beginning in 2007, Anderson began dealing with physical issues, starting with pain in his lower back. (AR 31.) In 2008, Anderson's back pain was treated with bilateral facet joint injections at the L3-4 and L4-5 vertebrae, an intralaminar lumbar epidural injection at L4-L5, and on two occasions a medial branch block of dorsal ramus of L4 and L5. (AR 273, 271, 266.) Anderson was also found to have patellofemoral pain in his right knee and was given a steroid injection. (AR 266.) During 2008, Anderson was diagnosed with a discoid atelectasis in his right lung, along with a suspicion of a developing right hilar mass or adenopathy. (AR 327.) He was also found to exhibit bilateral lower rib deformities, degenerative changes in the sacroiliac joints, and mild bibasilar atelectasis. (*Id.*)

Anderson returned for follow up care numerous times between 2009 and 2010. (AR 314, 308, 203, 304, 298, 274, 360, 289.) On June 12, 2009, Anderson was found

to have "chronic lumbar pain with recent increase in severity". (AR 314.) One week later, Anderson was exhibiting lumber facet syndrome. (AR 203.) In September 2008 and January 2009, Anderson again exhibited chronic back pain. (AR 304, 202.)

On April 16, 2010, Anderson saw David Chakoian, M.D., for a consultative examination. (AR 290.) Dr. Chakoian found that Anderson had tightness in the lumbar spine, normal ranges of motion in the mid-to-lower back, normal reflexes, mild weakness in his left big toe, and an inconsistent pattern of decreased foot and toe sensation. (*Id.*) Because Anderson's MRI was essentially normal, Dr. Chakoian recommended against an increased dosage of medication to relieve the pain. (*Id.*)

On April 23, 2010, Anderson stopped working. (AR 101.) The next day, Anderson was hospitalized for renal failure caused by ingestion of non-steroidal, anti-inflammatory drugs. (AR 293.) In July 2010, Anderson was further diagnosed with chronic lower back pain that limited his flexibility and core strength. (AR 360.)

On December 28, 2010, osteopathic physician Syd Foster, D.O., conducted a physical residual functional capacity ("RFC") assessment of Anderson for the Social Security Administration. (AR 328.) Dr. Foster found that Anderson could occasionally lift and/or carry objects weighing up to twenty pounds; frequently lift and/or carry objects weighing up to ten pounds; sit, stand, and/or walk with normal breaks for a total of about six hours in an eight hour workday; and push or pull objects without limitation. (AR 329.) Dr. Foster also found that Anderson should avoid even moderate exposure to fumes, odors, dusts, gases, and poor ventilation, but found no postural or manipulative limitations of any kind. (AR 330-32.)

3

On March 30, 2011, David Kamper, M.D., conducted another RFC assessment of Anderson. (AR 424.) Dr. Kamper found that Anderson could occasionally lift and/or carry up to twenty pounds and frequently lift and/or carry up to ten pounds. (AR 425.) Dr. Kamper also indicated that Anderson could sit with normal breaks for a total of six hours and stand and/or walk with normal breaks for a total of six hours in an eight hour workday. (*Id.*) Finally, Dr. Kamper opined that Anderson could push or pull objects without limitation, and that he was only further limited in avoiding concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (AR 425-28.)

### B.  Opinion of Thomas Franke, PA-C

On February 14, 2009, Anderson initially visited Thomas Franke, PA-C. (AR 306.) Franke reported that Anderson had mild lumbosacral pain and a "normal but cautious" gait. (*Id.*) On June 12, 2009, Franke reported that Anderson's pain had increased in severity and had tenderness to palpitation over the lumbar paraspinal muscles. (AR 300.) Franke also noted that Anderson appeared to have no lower extremity weakness. (*Id.*) Franke confirmed his diagnosis during a consultation with Anderson on August 29, 2009. (AR 297.)

On April 16, 2010, Franke diagnosed Anderson with "chronic myofascial back pain", opining that Anderson needed to modify his work habits and quality of life. (AR 290.) On May 18, 2010, Franke again identified Anderson's cautious gait, but found no signs of significant leg weakness, and prescribed physical therapy. (*Id.*) On May 28, 2010, Franke found that Anderson's forward flexion was full, but his extension was

4

limited by discomfort. (AR 286.) Franke also reported that Anderson stood from a sitting position with mild discomfort, and that there was again no sign of lower extremity weakness. *(Id.)*

On February 1, 2011, Franke completed a lumbar spine RFC questionnaire regarding Anderson. (AR 398.) He considered Anderson's prognosis to be poor and diagnosed Anderson with chronic lower back pain and lumbar facet syndrome retroactive to 2007. (AR 398, 401.) He opined that Anderson's back pain would occasionally be severe enough to interfere with the concentration and attention required to perform simple work tasks, that Anderson could walk less than one city block without rest or severe pain, that Anderson could only sit for fifteen minutes before needing to get up, and that Anderson could only stand for five minutes before having to sit down. (AR 399-400.) Franke further indicated that Anderson could only sit for a maximum of two hours and stand or walk for a maximum of two hours in an eight hour work day, that he needed a job permitting him to shift at will, and that he would need to frequently take unscheduled breaks lasting fifteen minutes. (AR 400.) Franke also recommended that Anderson never lift anything weighing ten pounds or more and rarely lift anything less than ten pounds. (AR 401.) Franke further opined that that Anderson could never twist, bend, and climb ladders or stairs, and could rarely crouch or squat. *(Id.)*

On October 20, 2011, Franke completed a seond questionnaire regarding Anderson's condition and reported an improved prognosis. (AR 512.) Franke reported that Anderson could lift up to ten pounds frequently. *(Id.)* He also opined that Anderson could sit and stand for up to thirty minutes consecutively, but still for no more

than two hours total over an eight hour work day.  (*Id.*)  Franke further recommended that Anderson be given two additional breaks per workday of ten minutes each, and that Anderson's condition could be expected to cause more than two absences from work per month.  (AR 513.)

### III. Administrative Law Judge's Decision

At step one, the ALJ found that Anderson had not engaged in substantial gainful activity since April 23, 2010, the alleged onset date.  (AR 13.)  At step two, the ALJ found that Anderson had three severe impairments: "back impairment, renal failure, and asthma." (*Id.*)

At step three, the ALJ attributed "significant weight" to the opinions of state agency medical consultants Syd Foster, D.O., and David Kamper, M.D.  (AR 16.)   In contrast, the ALJ attributed "little weight" to the opinions of Anderson's primary treatment provider, Thomas Franke, PA-C.

Consistent with his weighing of those opinions, the ALJ determined that Anderson had the RFC to perform a wide range of light work with the following limitations:

> [C]laimant is precluded from more than occasional climbing of ramps or stairs, stooping, bending, or crouching.  He is also precluded from any climbing of ropes, ladders, or scaffolds, crawling, or kneeling.  Further, claimant requires a sit/stand option so that he need not stand for more than 30 minutes at a time or sit for more than 30 minutes at a time.  In addition, the claimant is precluded from work exposing him to concentrated dust, fumes, smoke, chemicals, and noxious gases.

(AR 14.)  The ALJ further determined that Anderson had the RFC to occasionally lift or carry up to twenty pounds, frequently lift or carry up to ten pounds, and stand or walk

for up to six hours during a normal eight hour workday.  (AR 16-17.)

At step four, the ALJ determined that Anderson was unable to perform any past relevant work as a tree trimmer and assembler.  (AR 17.)  At step five, the ALJ relied upon a vocational expert's opinion that given Anderson's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Anderson could perform.  (*Id.*)  As a result, the ALJ found that Anderson was *not* under a disability as defined under the statute.  (AR 18.)

## OPINION

A federal court reviews an ALJ's decision with deference and will uphold a denial of benefits unless it is not supported by substantial evidence or is based on an error of law.  42 U.S.C. § 405(g); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge.  *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).

Even so, a district court may not simply "rubber-stamp" the Commissioner's decision without a critical review of the evidence. *See Ehrhart v. Secretary of Health and Human Servs.,* 969 F.2d 534, 538 (7th Cir. 1992).  A decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).  The ALJ must also explain his "analysis of

the evidence with enough detail and clarity to permit meaningful appellate review." *Id.* *See Herron v. Shalala*, 19 F.3d 329, 333–34 (7th Cir. 1994).  When the administrative law judge denies benefits, he must build a logical and accurate bridge from the evidence to her conclusion.  *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001).

Anderson principally contends that remand is merited because the ALJ fialed to give appropriate weight to the opinions of Thomas Franke, PA-C, due to his position as a physician's assistant.  While a physician assistant's opinion does not command controlling weight, SSR 06-03p provides factors that help an ALJ properly analyze what weight, if any, it does deserve.  Specifically, when weighing a medical source's opinion, SSR 06-03p requires consideration of the following factors: "(1) How long the source has known and how frequently the source has seen the individual; (2) How consistent the opinion is with other evidence; (3) The degree to which the source presents relevant evidence to support an opinion; (4) How well the source explains the opinion; (5) Whether the source has a specialty or area of expertise related to the individual's impairment(s); and (6) Any other factors that tend to support or refute the opinion."

Moreover, the ALJ is advised to consider that:

> With the growth of managed *health care in recent years and the emphasis on containing medical costs*, medical sources who are not "acceptable medical sources," such as nurse practitioners, *physician assistants*, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, *are important and should be evaluated on key issues such as impairment severity and functional effects*, along with the other relevant evidence in the file.

*See* SSR 06-03p (emphasis added).

8

This policy statement has also been credited by district courts.  In *Brown v. Astrue* 2012 WL 6692139 (N.D.Ill. Dec. 19, 2012), the court noted:

> SSR 06–3p is clear that the opinions of "other sources" like nurse practitioners "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file. Id.; see also 20 C.F.R. § 404.1513(d) (1). They must also be weighed using the same factors that apply to treating and acceptable sources. SSR 06– 3p . . . An ALJ's failure to consider a nurse practitioner's opinion in accordance with these guidelines can amount to reversible error.

*Id*. at 7.  *See also Dogan v. Astrue,* 751 F.Supp.2d 1029, 1038 (N.D.Ind. 2010 (reversible error where the ALJ gave no weight to the physician's assistant).

Here, the ALJ purported to give "little weight" to the opinion of Mr. Franke because:  (1) Mr. Franke was not an acceptable medical source; (2) there were "substantial differences" between Mr. Franke's February 2011 opinion and his October 2011 opinion; (3) many of the limitations identified by Mr. Franke were "largely unexplained;" and (4) Mr. Franke's February 2011 opinion was directly contradicted by Plaintiff's work history. (AR 16).

Contrary to the Commissioner's contentions, each of the ALJ's stated reasons is deficient on this record.  Indeed, the first reason is essentially beside the point.  As already noted, with the growth of managed health care in recent years, "nurse practitioners and physician assistants have increasingly assumed a greater percentage of treatment evaluation."  *See* SSR 06-03p.  Because of this development, the so-called, non-acceptable source opinion has taken on greater significance as recognized by the Social Security Administration.  For example, in

considering the opinion of a physical therapist in *Laabs v. Astrue*, 2011 WL 2115902 (E.D.Wis May 25, 2011), the court stated:

> Although not an "acceptable medical source," the opinion of a physical therapist cannot be simply disregarded. SSR 06–3p. To the contrary, particularly when it comes to chronic conditions, the Seventh Circuit has recognized physical therapists as having "significant expertise," that may be particularly valuable in an assessment of a claimant's limitations in that a physical therapist's determinations are often made based upon physical tests and observations rather than the claimant's subjective complaints. Barrett v. Barnhart, 355 F.3d 1065, 1067–68 (7th Cir.2004). Thus, under certain circumstances, the opinion of someone who is not an acceptable medical source, like a physical therapist, might be afforded greater weight than that of an acceptable medical source, even a treating source. SSR 06–3p.

*Id*. at *7. This is not to say that an opinion may not be given greater weight more highly because it comes from an approved medical source (often a doctor), but rather that a non-acceptable source can trump evidence from approved sources because of other relevant factors.

Here, the court's real concern with the ALJ's stated reasons, particularly the first, for giving little weight to the physician assistant's opinions is that he seems to have approached the analysis from the wrong frame of reference.   What reinforces this concern is that the ALJ failed to recognize the significance of SSR-06-03p in his analysis, much less consider that rule's relevant factors.   For example, nowhere in the decision is there discussion of the length of the relationship between Physician Assistant Franke and Anderson (over two years); nor is there discussion of the frequency of the visits (approximately 29 face-to-face appointments). (AR 314-461.)   Likewise, there is no discussion of Franke's

specialty or degree.[2]  Moreover, all of these factors tend to *add* weight to the value of Franke's opinion.  The ALJ's failure to properly (1) apply SSR 06-03p, and (2) acknowledge evidence that has a direct bearing on the weight that should have been given Franke's opinion, is enough to warrant remand of the ALJ's decision.

The ALJ's second reason to discount Franke's opinion is also deficient.  The ALJ points to Franke's second report, which indicates that Anderson has "improved" since the first report. (AR 16.)  Why an improvement in Franke's assessment of Anderson's limitations from his first report (February 2011) to his second report (October 2011) would be a reason to discount the *second* report is something of a mystery.  If anything, Franke's having found an improvement would arguably suggest a dispassionate assessment, rather than his having taken on the role of an advocate for Anderson.

To the extent the ALJ was actually referring to some ambiguity created by Franke's two reports as a reason to give his opinion less weight, he does not say and there is no reason for this court to speculate.  As the case-law provides, where there is an ambiguity in the evidence, the ALJ should take the simple step of requesting further information from the source to better explain the precise nature the medical condition. *Smith*, 231 F.3d at 437.  That is, "[a]lthough a claimant has the burden to prove disability,  the ALJ has a duty to develop a full and fair record." *Smith v. Apfel*, 231 F.3d

---

[2] In normal parlance, to a call physician's assistant a non-acceptable medical source would be a misnomer because the degree requirements for the position seem quite demanding. According to the American Academy of Physician Assistant, most university programs are 26 months and require the same prerequisite courses as medical schools.  Upon certification, the PA may: (1) diagnose and treat illnesses; (2) order and interpret tests; and (3) develop treatment plans. *See* American Academy of Physician Assistant's website,  http://http://www.aapa.org/landingquestion.aspx?id=290 (last visited October 1, 2014).

433, 437 (7th Cir. 2000).  Moreover, the ALJ is better equipped to make a determination as to Anderson's disability claim.  *Id.* (stating that "failure to fulfill this obligation [*i.e.*, the duty to develop the record] is 'good cause' to remand for gathering of additional evidence").

As to the third reason -- that many of the limitations identified by Mr. Franke were "largely unexplained" -- this rationale for discounting Mr. Franke's evidence does not square with the medical record.  While the February and October 2011 reports could be more fulsome in their explanation than what is noted, the explanations can hardly be considered threadbare.  Moreover, when Franke's explanations are viewed in the context of his broader treating history, Franke's conclusions arguably hold up better, having been drawn from 29 separate visits over a two year period.  The results of each visit were recorded in writing and are summarized in Anderson's brief, indicating that Franke's treatment of Anderson has not only been constant in his medical care, but well documents and worthy of substantial consideration under SSR 06-03p.

Finally, the ALJ's fourth reason -- that Franke's February 2011 opinion was directly contradicted by plaintiff's work history -- is not among the express factors articulated in SSR 06-03p, except for the catchall in factor (6) allowing an ALJ to look at "any other factors that tend to support or refute the opinion."  Given that the ALJ has ignored all the specific SSR 06-06p factors that bolster Franke's opinion, his use of plaintiff's sporadic work history to discount Franke's medical opinion may or may not be sufficient by itself.  If the ALJ had found evidence of substantial gainful employment after the claimed onset date, he could have rejected Anderson's disability claim at step

12

one of his analysis.  But he made no such finding.  Instead, he merely criticized Franke for opining that Anderson's back issues likely existed during an earlier period when he was gainfully employed.  Given that Franke actually saw Anderson much later, during a period when he stopped working altogether, the importance of this opinion is arguable at best.  Whatever its import, it was but one of four reasons to discount Franke's opinion. Since the other three reasons do not hold up *and* the ALJ ignored all other specific factors, the ALJ was not free to cherry pick this one factor without further explanation. *Smith*, 231 F.3d at 438 (impermissible cherry-picking providing further cause for remand).

## ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Commissioner of Social Security, denying Robert L. Anderson's application for disability insurance benefits and supplemental security income is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.  The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 2nd day of October, 2014.

BY THE COURT:

/s/

_____

William M. Conley
District Judge

13